DAVIDSON & GRANNUM, LLP
Sandra D. Grannum (SG6748)
Joel E. Davidson (JD0212)
30 Ramland Road
Orangeburg, New York 10962
Phone: (845) 365-9100
Attorneys for Plaintiff
Hamid Fashandi

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **HAMID FASHANDI,** | |
| **Plaintiff,** | |
| -against- | Civil Acton No. ___-CIV.-____ |
| | **JURY DEMANDED** |
| **YORKVILLE ADVISORS, LLC a/k/a YORKVILLE ADVISORS MANAGEMENT LLC a/k/a YAM GLOBAL LIMITED, YA GLOBAL INVESTMENTS, L.P. f/k/a CORNELL CAPITAL PARTNERS, L.P. a/k/a CORNELL CAPITAL PARTNERS (US) L.P., YA OFFSHORE GLOBAL INVESTMENTS, LTD f/k/a CORNELL CAPITAL PARTNERS OFFSHORE, LTD, and MARK ANGELO,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff Hamid Fashandi, by counsel, Davidson & Grannum, LLP, as and for his

Complaint, alleges as follows:

## PARTIES

1.      Plaintiff Hamid Fashandi is an Individual who is a resident of the state of New Jersey and is a former employee of Defendants.

2.      Upon information and belief, Defendant YA Global Investments, L.P., a/k/a YA Offshore Global Investments, Ltd. f/k/a Cornell Capital Partners LP a/k/a Cornell Capital Partners (US), LP a/k/a Cornell Capital Partners Offshore, L.P., ("Cornell Capital") has its principal place of business at 101 Hudson Street, Suite 3700, Jersey City, New Jersey.

3.      Upon information and belief, Defendant Yorkville Advisors, LLC a/k/a Yorkville Advisors Management LLC a/k/a YAM Global Limited ("Yorkville Advisors") has its principal place of business at 101 Hudson Street, Suite 3700, Jersey City, New Jersey.

4.      Upon information and belief, Defendant Mark Angelo ("Angelo") the President and Co-founder of Yorkville Advisors and Co-founder of YA Global Investments, L.P. f/k/a Cornell Capital Partners, L.P. resides at 8 Kimball Circle, Westfield, New Jersey.

5.      Defendants are employers within the meaning of Section 101(7) of the ADA, 42 U.S.C. 12111(7), which incorporates by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. 2000e (b), (g) and (h).   At all relevant times,

Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. 12111(2).

## JURISDICTION

6. The Court has jurisdiction pursuant to 28 U.S.C. §1331, §1343, and pendant jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

7. Venue is proper as Plaintiff presently resides in the State of New Jersey and worked for Defendants in the State of New Jersey.

## FACTS

### I. Defendants' Background

8. Upon information and belief, Defendants Cornell Capital and Yorkville Advisors are affiliate corporations both co-founded by Defendant Angelo. In addition, Defendant Angelo is the President of Yorkville and makes the management decisions for both Yorkville and Cornell Capital.

9. On information and belief, Defendant Yorkville Advisors was founded in 2001 and has approximately 57 employees, of whom 26 are investment professionals/bankers.

10. Upon Information and belief, Defendant Yorkville represents to the public that its investment professionals have a wide range of expertise including:

3

Energy, Healthcare, Renewable Energy, Media, Technology, Real Estate, Telecommunications, Consumer Products, and Natural Resources. Yorkville Advisors also represents to the public that it is a pioneer in the development of structured finance, particularly the Standby Equity Distribution Agreement[SM] and it has introduced the Standby Equity Distribution Agreement[SM] to companies listed on stock exchanges domestically in the United States and international exchanges such as the London Stock Exchange, Australian Stock Exchange and the EuroNext Pan European Exchange.

11.    Upon information and belief, Yorkville Advisors LLC also represents to the public that it is the General Partner and Investment Manager to YA Global Investments, L.P. – a private investment fund that specializes in structured finance and direct investments.[1]

12.    Upon information and belief, Cornell Capital is a private investment fund that specializes in structured finance to small and mid-cap public companies by providing private investing in public equities (PIPEs). Upon information and belief, Cornell Capital was one of the most active funds in the United States in terms of the number of structured financings in 2005. Upon information and belief, Cornell Capital structured over 100 transactions worth in excess of $800,000,000 during the 12 months ending June 2007.

---

[1] Defendants controlled a defunct private investment fund named "Highgate House". Plaintiff did work for the

4

13.    On information and belief, Defendant Angelo is the majority managing owner of Yorkville, and he primarily approves all of the structured financing deals for Defendants, controls Cornell Capital's proprietary stock portfolio and makes the major management decisions for both Cornell Capital and Yorkville.

14.    Upon information and belief, Defendants earned substantial income by financing as many transactions as possible and charging various structuring fees, due diligence fees, legal fees, equity fees (common stock and warrants), management fees, performance fees, stock mark-ups and deep stock discounts.

## II.    Plaintiff's Employment

15.    Plaintiff had been an employee of Defendants from their startup in 2001.    Plaintiff was employed as a Senior Vice President, in Defendants' Corporate Finance Department. (Exhibit A).

16.    Plaintiff has a Bachelor's degree in Political Science and Economics and has been in the financial services industry since 1994. Prior to his employment with Defendants, Plaintiff had similar Capital Markets and finance expertise having assisted in the development of the Capital Markets department of a former investment bank employer where he structured and placed debt and equity based financings for micro and small capitalization publicly traded companies. Plaintiff

---

Highgate House fund as and employee of Defendants.

began his career as a registered representative providing retail trading and asset allocation services to individual investors at several boutique broker-dealers.

17.    Plaintiff is also an individual of Middle Eastern descent who is afflicted with a sleeping disorder which substantially limits his major life activities.

18.    This disorder makes it difficult for Plaintiff to routinely maintain 9:00 a.m. to 5:00 p.m. office hours.    Notwithstanding this, during Plaintiff's employment with Defendants he worked flexible office hours, from his home office, during the weekends and well into the night far exceeding 40 hour weeks.

19.    Plaintiff was capable of performing his duties with Defendants and loyally did so.  Plaintiff's work did not suffer as a result of his disability nor did Defendants suffer undue hardship as a result of Plaintiff's flexible office hours as several of Plaintiff's clients were located on the West Coast and consequently his later work hours were more convenient for those clients.

20.    Defendants were aware of Plaintiff's disability at the commencement and entire duration of his employment.

21.    Defendants did not object to these flexible office hours as Plaintiff was capable of getting the job done and generating for Defendants a substantial amount of profit in the form of fees and commissions.  Moreover, Defendants did not officially establish mandatory office hours for exempt personnel.

22.    Notwithstanding this, on May 2, 2007, David Gonzalez (Managing

Member and General Counsel of Defendants) entered Plaintiff's office and advised Plaintiff that he was being terminated on Defendant Angelo's orders due to Plaintiff's office work schedule.

23.    Plaintiff had never before received a complaint or warning regarding his office work schedule, nor was he advised to change his schedule.

24.    Until the day of his termination, Plaintiff had no reason to believe Defendants had changed their policy regarding accommodating his disability. However, on the day of his termination Mr. Gonzalez informed Plaintiff that "you are not going to get a lot of sympathy from a guy like me when you keep the hours you keep."

25.    Defendants' only reason for terminating Plaintiff's employment was discrimination. Defendants Managing Member and General Counsel's comments to Plaintiff during Plaintiff's termination, that "you are not going to get a lot of sympathy from a guy like me when you keep the hours you keep" is evidence of Defendants' motivation to terminate Plaintiff based upon his sleeping disorder.

26.    Defendants terminated Plaintiff because he was an individual with a disability. Plaintiff's sleep disorder is a disability covered by the Americans with Disabilities Act ("ADA"). The disability did not prevent Plaintiff from performing his job functions with reasonable accommodations. In fact, during the six years prior to this termination, Defendants provided that accommodation and Plaintiff

7

performed his duties.

### III.  Wrongful Withholding of Wages and Conversion of Assets

27.    Not only was Plaintiff wrongfully terminated, Defendants deprived Plaintiff of wages and commissions previously earned.

28.    Since his employment in August 2001, Plaintiff's commission compensation had been tied to the banker's fees on each of the deals he generated on behalf of Defendants.  These banker's fees consisted of both cash and equity (common stock and warrants).

29.    Defendants paid Plaintiff his commissions in cash from the cash portion of Defendants' fee.  As to the equity portion of Plaintiff's fee, Plaintiff had historically been paid twenty percent (20%) of the equity fees.

30.    Defendants have taken the position with Plaintiff that the equity and warrants portion of Cornell Capital's fee he earned would be paid in cash after the particular equity transaction was monetized because this was company "policy".  However, upon information and belief, this "policy" was not uniformly applied as certain bankers that Defendant Angelo favored directly received equity in kind on some of the deals they closed.  For instance, U.S. Helicopter Corporation's Form SB-2/A filed on August 17, 2005 indicated that two employees of Defendants, received shares of U.S. Helicopter Corporation common stock in connection with the deal they closed with U.S. Helicopter Corporation for Cornell Capital.  Upon

information and belief, Defendants have paid others in this fashion.

31.    For the period of time preceding January 15, 2007, Plaintiff worked for and earned his equity share in deals he brought to the Defendants.

32.    Defendants withheld much of this compensation from Plaintiff after his wrongful and discriminatory termination, regardless of whether the equity portion of those deals had been monetized.

33.    The deals for which Plaintiff was not paid are: a) Falcon Natural Gas (FNGC); b) Essentially Yours Industries Inc., (EYII); c) Nexicon Inc. (NXCN); d) Medical Staffing Solutions (MSSI) distressed; e) Gulf Coast Oil & Gas, (GCOG); f) Omagine, Inc.(OMAG) f/k/a Alfa Int'l Holdings, (AHDS); g) Hard To Treat Diseases (HTDS); and, h) Cavit Sciences (CVIT).

34.    Upon information and belief, Defendants have already sold warrants on four of Plaintiff's deals, specifically: Nexicon Inc. (NXCN); Omagine, Inc. (OMAG) f/k/a Alfa Int'l Holdings, (AHDS); Hard To Treat Diseases (HTDS); and, Cavit Sciences (CVIT).

35.    Notwithstanding the fact that warrants have been sold on four of Plaintiff's deals, Defendants have not paid Plaintiff for any of these deals.

36.    Plaintiff's share of the commissions on these deals is twenty percent (20%) of Cornell Capital's Equity share.

37.    In public filings, at the time of Plaintiff's termination, the Companies

which issued these deals reported Cornell Capital's Equity Share on these deals to total $8,676,653.00.

38.    Consequently, in total, Plaintiff is owed commissions amounting to $1,735,330.60 for work he performed prior to January 15, 2007.

39.    On January 15, 2007, this compensation scheme was unilaterally changed without remuneration.    Defendants informed Plaintiff he would be compensated based upon a new retroactive formula by which he would receive an annual salary of $105,000 as well as 10% of any cash fee and 20% of Cornell Capital's profits per deal.  This differed from Plaintiff's prior arrangement in that in the new arrangement Plaintiff earned only a percentage of Cornell Capital's profits while through his former arrangement Plaintiff earned a twenty percent (20%) portion of Cornell Capitals' equity fees.  This new compensation formula was to become effective retroactively on January 1, 2007.

40.    Plaintiff is also owed $13,100 in cash commissions which he earned in the post-January 2007 period.  This sum as been wrongfully withheld from Plaintiff.

41.    Upon information and belief, these withholding constituted a racially discriminatory act.

## IV.  Unlawful Restrictive Covenants

42.    By January 15, 2007, Defendants further pursued their discriminatory

course of conduct. In addition to changing Plaintiff's pay structure formula, Defendants, without compensation, as part of the scheme to unlawfully discriminate against him and terminate him, Defendants improperly and illegally extracted from Plaintiff his signature on a supposed employment agreement and a supposed "Employee Confidentiality and Non-Compete Agreement". In so doing, Defendants' sought to prevent Plaintiff from being able to seek similar employment in his field and, consequently, prevented Plaintiff from earning a livelihood in his profession.

43.    Plaintiff received no consideration in exchange for his promises in these agreements. Plaintiff had no input into their content, no advice of counsel and was threatened with termination if he did not sign these coerced adhesion "agreements". (Exhibit B).

44.    As a result of these contracts of adhesion employed for discriminatory purposes, Plaintiff has been denied employment for a year.

## V.    Defamation and Interference with Business and Prospective Business Relationships

45.    Since their wrongful termination of Plaintiff, Defendants have been on a campaign to ruin Plaintiff's personal and professional reputation and prevent him from competing in the financial industry. Plaintiff's former clients were informed that Plaintiff had been terminated because Defendants were "upgrading", clearly

11

implying Plaintiff was "sub-grade."

46.    At no time during Plaintiff's employment did he behave or conduct business in a fashion contrary to Company policy. Plaintiff behaved and transacted deals exactly as he was instructed to behave and earned the Company significant profit.

47.    Defendants knew their disparaging statements to be false.

48.    These statements have caused, and will continue to cause, Plaintiff damages.

49.    After Plaintiff's termination, he received a telephone call from the Federal Bureau of Investigation, inquiring into his travel plans. Upon information and belief, this telephone call was prompted by comments made by Defendants regarding Plaintiff and Plaintiff's background, nationality, ethnicity, travel plans and false statements relating to Plaintiff's proclivities.

50.    Defendants' disparagement of Plaintiff and his work performance is *per se* defamatory.

51.    Plaintiff, one of only two Muslim employees of Defendants, had been a dedicated employee of Defendants from its inception. Notwithstanding this, he was cleared out during the Company's proclaimed "upgrading" of employees. Defendants' representations to Plaintiff's former clients regarding the Company's "upgrade" of employees and the termination of Plaintiff are discriminatory and

12

defamatory.

52.    Cornell Capital has been reported as being associated with the operator of a Racist/Hate Speech Website (Exhibit C).  Defendants' comments were an ethnic/religious slur and a disparagement on Plaintiff's professional abilities.  These comments were totally inappropriate, defamatory and designed to interfere with Plaintiff's prospective business relationships.

## VI.    Unconscionable Business Practice and Hostile Work Environment Damaged Plaintiff

53.    Defendants were aware of Plaintiff's disability and accommodated that disability for six years without undue hardship.  Defendants' continued accommodation of Plaintiff's disability was appropriate and would not have, in any way, presented an undue hardship on Defendants.  Defendants' new course was unexpected, inappropriate and motivated by discrimination.

54.    Defendants' illegal actions have deprived Plaintiff of commissions previously earned in violation of the wage and hour laws; denied him the ability to earn his salary and commissions after his termination; and prohibited him from finding gainful employment for at least a year.

55.    In light of Defendants' defamation, Plaintiff's likelihood of securing future employment has been greatly diminished.

56.    Defendants terminated Plaintiff on the basis of his disability, national

origin, ethnicity and religion. Defendants' Managing Partner/General Counsel statements evidenced Plaintiff's termination was wrongful and discriminatory.

57.    The effect of Defendants' actions has been to deprive the Plaintiff of his earned commissions, equal employment opportunities and to otherwise adversely affect his status as an employee because of his disability, national origin and ethnicity.

58.    Without the equity based component of Plaintiff's compensation (twenty percent (20%) of Cornell Capital's equity share), Plaintiff's average annual income for the 2005-2006 period was $431,797. With Plaintiff's equity share, Plaintiff's yearly income would have, and should have, been $2,167,127.60.

59.    Plaintiff would have earned at least this income for the period May 2007 through May 2008 prior to the Defendants' contracts of adhesion and wrongful termination of Plaintiff.

60.    Plaintiff was prevented, by Defendants' illegal restrictive covenants and defamation, from earning a living for a year after Defendants discriminatorily fired Plaintiff.

61.    In addition, during the course of Plaintiff's employment Defendants extracted from Plaintiff illegally coerced political contributions and fifteen thousand dollars ($15,000) for a luxury sport box used by Defendants' partners.

62.    Defendants paid Plaintiff a draw against commission which they ran

14

through their payroll services deducting FICA and taxes, and upon information and belief, deducted as a business expense. However, Defendants would thereafter force Plaintiff to repay Defendants the entire draw (including withheld taxes) from his commissions. Plaintiff's commissions were issued through an IRS 1099 form and taxes paid directly by Plaintiff. Consequently, Plaintiff was subjected to paying taxes on a loan, while Defendants received a business expense "salary" for Plaintiff which was in reality a loan repaid to them in full by Plaintiff.

63.    The unlawful employment practices complained of above were intentional.

64.    The unlawful employment practices complained of above were done with malice and reckless disregard for Plaintiff's federally and state protected rights, in violation of the ADA, 42 U.S.C. § 12101 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the New Jersey Law Against Discrimination, N.J.S.A. § 10:1-1 *et seq.* and the New Jersey Law Wage and Hour laws, N.J.S.A. § 34:11-4.10.

## AS A FIRST CAUSE OF ACTION FOR
## DISCRIMINATION UNDER TITLE I OF THE ADA

65.    Repeats and realleges each and every allegations of Paragraphs 1 through 64 hereof as if fully set forth herein.

66.    Title I of the ADA, 42 U.S.C. § 12112(a), provides that it shall be an

unlawful employment practice for an employer

> To discriminate against a qualified individual with a disability
> because of the disability of such individual in regard to . . . discharge
> of employees . . . and other terms, conditions, and privileges of
> employment.

67.    Defendant engaged in an unlawful employment practice prohibited by

the ADA, 42 U.S.C. § 12112(a), by terminating and otherwise discriminating

against Plaintiff because of his disability.

68.    As a consequence of the foregoing, Defendants are liable to Plaintiff

in an amount to be determined at trial.

## AS A SECOND CAUSE OF ACTION FOR
## DISCRIMINATION UNDER TITLE VII OF THE CIVIL RIGHTS ACT

69.    Repeats and realleges each and every allegations of Paragraphs 1

through 68 hereof as if fully set forth herein.

70.    Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) provides

that it shall be an unlawful employment practice for an employer

> To discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's race, color,
> religion . . . or national origin.

71.    Defendant engaged in an unlawful employment practice prohibited by

the Title VII, by terminating and otherwise discriminating against Plaintiff because

of his national origin, ethnicity and religion.

72.    As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A THIRD CAUSE OF ACTION FOR
## DISCRIMINATION UNDER NJLAD

73.    Repeats and realleges each and every allegations of Paragraphs 1 through 72 hereof as if fully set forth herein.

74.    The New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-12a, provides that it shall be an unlawful employment practice for an employer:

> Because of the race, creed, color, national origin, ancestry . . . [or] disability . . . of any individual . . . or the nationality of any individual to discharge . . . from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

75.    Defendant engaged in an unlawful employment practice prohibited by the NJLAD, N.J.S.A. § 10:5-12a, by terminating and otherwise discriminating and retaliating against Plaintiff Fashandi because of his disability, national origin, ethnicity and religion.

76.    As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A FOURTH CAUSE OF ACTION
## FOR BREACH OF CONTRACT

77.    Repeats and realleges each and every allegations of Paragraphs 1 through 76 hereof as if fully set forth herein.

78.    Defendants breached their contract with Plaintiff by failing to pay him the commissions he earned.

79.    As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A FIFTH CAUSE OF ACTION
## FOR COMMON LAW FRAUD

80.    Repeats and realleges each and every allegation of Paragraphs 1 through 79 hereof as if fully set forth herein.

81.    Defendants represented to Plaintiff that he would be paid for the work he performed and that he would receive 20% of Cornell Capital's cash and equity payments in commissions on the deals he brought to Defendants. Defendants wrongfully terminated Plaintiff's employment with the intent of depriving him of these sums.

82.    In so doing, Defendants made material misrepresentations concerning Plaintiff's compensation, with knowledge or belief of their falsity, and with the intention that Plaintiff rely on their material misrepresentations. Plaintiff did

18

reasonably rely on Defendants' material misrepresentations, and suffered damages as a result.

83. As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A SIXTH CAUSE OF ACTION
## FOR CONVERSION

84. Repeats and realleges each and every allegation of Paragraphs 1 through 83 hereof as if fully set forth herein.

85. Plaintiff performed his work as required.

86. Defendants nonetheless have refused to pay Plaintiff the 20% of Cornell Capital's cash and equity payments in commissions on the deals Plaintiff brought to Defendants.

87. Plaintiff has requested the income he has earned.

88. Defendants have converted Plaintiff's funds as they wrongfully exercise dominion and control over the property of Plaintiff Fashandi, in the form of his rightful income, in a manner inconsistent with Plaintiff's rights in the property, and notwithstanding Plaintiff's request for that income.

89. As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A SEVENTH CAUSE OF ACTION FOR UNFAIR AND DISCRIMINATORY RESTRICTIVE COVENANTS AND TORTIOUS INTERFERENCE WITH PROSECTIVE -BUSINESS

90.    Repeats and realleges each and every allegation of Paragraphs 1 through 89 hereof as if fully set forth herein.

91.    Defendants imposed upon Plaintiff a retroactive restrictive covenant which was overbroad and unconscionable, without compensation and under threat of termination.

92.    Defendants' actions prevented Plaintiff from earning a livelihood in his profession for a year.

93.    Plaintiff received no consideration in exchange for his promises in these agreements.  Plaintiff had no input into their content, no advice of counsel and was threatened with termination if he did not sign these coerced adhesion "agreements".

94.    As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A EIGHT CAUSE OF ACTION FOR UNJUST ENRICHMENT

95.    Repeats and realleges each and every allegation of Paragraphs 1 through 94 hereof as if fully set forth herein.

96.    Plaintiff performed his work as required.

97.    Defendants nonetheless have refused to pay Plaintiff the 20% of Cornell Capital's cash and equity payment in commissions on the deals Plaintiff brought to Defendants.

98.    Plaintiff has requested the income he has earned.

99.    Defendants have been unjustly enriched by Plaintiff's work and the resulting commission equity.

100.    As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A NINTH CAUSE OF ACTION
## FOR N.J.S.A. 34:11-4.10 WAGE AND HOUR VIOLATIONS

101.    Repeats and realleges each and every allegation of Paragraphs 1 through 100 hereof as if fully set forth herein.

102.    Plaintiff performed his work as required.

103.    Defendants nonetheless have refused to pay Plaintiff the wages he has earned and required him to return wages.

104.    As a consequence of the foregoing, Defendants have violated N.J.S.A. 34:11-4.10.

105.    Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A TENTH CAUSE OF ACTION
## FOR QUANTUM MERITE

106. Repeats and realleges each and every allegation of Paragraphs 1 through 105 hereof as if fully set forth herein.

107. Plaintiff performed his services for the Defendants as required, in good faith, and with the expectation of compensation.

108. Defendants accepted the services performed by Plaintiff, but failed to compensate him for the reasonable value of those services, having refused to pay Plaintiff his wages.

109. As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## AS A ELEVENTH CAUSE OF ACTION
## FOR DEFAMATION

110. Repeats and realleges each and every allegation of Paragraphs 1 through 109 hereof as if fully set forth herein.

111. Upon terminating Plaintiff, Defendants undertook a course of conduct of disparaging Plaintiff to his former clients, business associates and others with defamatory statements of fact, concerning Plaintiff, which were false, and made with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or

falsity, and which caused Plaintiff damage. Defendants' conduct was intended to, and did, injure Plaintiff's personal and professional reputation.

112. Upon terminating Plaintiff, Defendants undertook a course of conduct of disparaging Plaintiff to the Federal Bureau of Investigation with defamatory statements of fact, concerning Plaintiff, which were false, and made with actual knowledge that the statement was false or with reckless disregard of the statement's truth or falsity or with negligence in failing to ascertain the truth or falsity, and which caused Plaintiff damage. Defendants' conduct was intended to, and did, injure Plaintiff's personal and professional reputation.

113. The above-referenced conduct imputed to Plaintiff conduct, characteristics or a condition that adversely affected Plaintiff in his lawful business and trade. Defendants' conduct was injurious to Plaintiff *per se*. Defendants' conduct adversely affected Plaintiff's reputation. Defendants' conduct caused Plaintiff to suffer personal humiliation. Defendants' conduct interfered, and continues to interfere, with Plaintiff's ability to secure future employment.

114. As a consequence of the foregoing, Defendants are liable to Plaintiff in an amount to be determined at trial.

## INJURY AND DAMAGES

As a result of the Defendants' unlawful discriminatory employment practices, breach of contract, fraud, defamation and tortious conduct, Plaintiff has

23

suffered loss of earnings, commissions, and other benefits of employment including, but not limited to, medical benefits, retirement income, injury to his reputation, injury to his mental and emotional wellbeing, physical distress, pain and suffering, and loss of future income in an amount to be determined at trial.

## **REMEDY**

WHEREFORE, Plaintiff requests a judgment against the Defendants:

A.    Declaring that Defendants engaged in unlawful employment practices prohibited by the ADA, 42 U.S.C. § 12101 *et seq.* by discharging Plaintiff from his employment and otherwise discriminating against Plaintiff;

B.    Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, 42 U.S.C. § 2000e  *et seq.* by discharging Plaintiff from his employment and otherwise discriminating against Plaintiff;

C.    Declaring that Defendants engaged in unlawful employment practices prohibited by New Jersey Law Against Discrimination, N.J.S.A. § 10:1-1 *et seq*;

D.    Declaring that Defendants breached their contracts with Plaintiff;

E.    Declaring that Defendants perpetuated a fraud against Plaintiff;

F.    Declaring Defendants failed to pay Plaintiff wages and commissions earned;

G.    Declaring that Defendants engaged in unlawful employment practices

prohibited by New Jersey Wage and Hour Law, N.J.S.A. 34:11-4.10;

H.     Awarding damages to the Plaintiff, retroactive to the date of his termination, for lost wages, commissions and benefits resulting from Defendants' unlawful termination of Plaintiff's employment and defamation of Plaintiff's character and professional reputation and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices, and fraudulent, defamatory and tortious conduct;

I.     Awarding Plaintiff future income to the Plaintiff in an amount to be proven, but not less than $5,000,000, representing all loss of future earnings, including reasonable and expected increases, commissions, bonuses, loss of retirement income and all other benefits he would have expected to earn during his entire lifetime had it not been for Defendants' unlawful discharge of his employment;

J.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to Plaintiff's reputation in an amount to be proven;

K.     Awarding Plaintiff punitive damages

L.     Awarding Plaintiff attorneys' fees, costs and expenses incurred in the prosecution of the action;

M.     Awarding Plaintiffs such other and further relief as may be deemed

equitable, just and proper to remedy the Defendants' unlawful employment practices.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

Dated:  April 29, 2008                    Respectfully submitted,

                                          DAVIDSON & GRANNUM, LLP
                                          Counsel for Hamid Fashandi


                                          Sandra D. Grannum (SG6748)
                                          Joel E. Davidson (JD0212)
                                          30 Ramland Road, Suite 201
                                          New York, New York 10962
                                          (845) 365-9100